## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOAN PASINI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRET A MANGER (USA) LIMITED (d/b/a Pret A Manger),<br><br>Defendant. | Case No. 1:17-cv-6395 |

## CLASS ACTION COMPLAINT

Plaintiff, by her counsel of record, brings this action on her own behalf and on behalf of all others similarly situated, and alleges the following upon personal knowledge, or where there is not personal knowledge, upon information and belief:

## PRELIMINARY STATEMENT

1.     Plaintiff on behalf of herself and all others similarly situated brings this action against Pret A Manger (USA) Limited (d/b/a Pret A Manger) ("Defendant") based on Defendant's violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §§ 1681 *et seq.*

2.     FACTA provides in relevant that "**no person** that accepts credit cards or debit cards for the transaction of business **shall print more than the last 5 digits of the card number** . . .

1

**upon any receipt provided to the cardholder** at the point of the sale or transaction" 15 U.S.C. § 1681c(g) (emphasis added).[1]

3.    The FACTA law gave merchants who accept credit and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.  Although Defendant had up to three years to comply, Defendant has willfully violated this law and failed to protect Plaintiff and others similarly situated against identity theft and credit and debit card fraud by printing more than the last 5 digits of the card number and the name of the cardholder on receipts provided to credit card and debit card cardholders transacting business with Defendant.  More specifically, Defendant printed the first 6 digits and the last 4 digits of the credit and/or debit card number, together with cardholder name, on credit and/or debit card receipts.  This conduct is in direct violation of FACTA.

4.    Nor is Defendant's willful violation of FACTA a trifling matter.  In the statement provided during his signing of FACTA in 2003, the President underscored the importance of the legislation in combating rampant identity theft:

> This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

---

[1] As the Unites States Government explained in its brief in support of FACTA's truncation provisions filed in *Papazian v. Burberry Ltd.*, 2:07-cv-01479-GPS-RZ (C.D. Cal.), Congress' decision to enact FACTA followed many other state legislatures, including those of New York, who had already enacted state laws prohibiting merchants from printing the expiration date or more than the last 5 digits of the card on customer receipts.  Exhibit 3 at pp. 13-14 and n. 2 and 3, citing N.Y. Gen. Bus. Law § 520-a which provides that "No person, firm, partnership, association, limited liability company, corporation, or other entity that accepts charge, credit, or debit cards for the transaction of business shall print the expiration date of the charge, credit, or debit card nor shall any person, firm, corporation, partnership, association, limited liability company, or other entity print more than the last five digits of the charge, credit, or debit card account number upon any receipt provided to the card holder.  N.Y. Gen. Bus. Law § 520-a(4-a)(a).

5.      Courts have likewise emphasized the purpose of FACTA. For example, the Ninth Circuit recently emphasized that "[i]n fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (quoting 149 Cong. Rec. 26,891 (2003) (statement of Sen. Shelby)).

6.      Similarly, the Seventh Circuit recently explained the "Identity theft is a serious problem, and FACTA is a serious congressional effort to combat it." *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014).

7.      Moreover, despite many defendants' attempts to label FACTA violations as "technical," the Ninth Circuit has squarely rejected such arguments and held that such a violation "is not merely 'technical.'" *Bateman*, 623 F.3d at 714 and n.4.  Plaintiff's situation is exactly the scenario Congress sought to avoid by passing FACTA.

8.      Further, by printing the first 6 and last 4 digits of the card number on the receipts provided to Plaintiff and other credit card and/or debit card cardholders transacting business with Defendant, together with the name of the cardholder, Defendant has harmed Plaintiff and the Class by exposing them to at least an increased and material risk of identity theft and credit and/or debit card fraud.

9.      For example, the first 6 and last 4 digits of the card number either alone and/or in conjunction with the cardholder's name can be used to bolster the credibility of a criminal who is making pretext calls to a card holder or engaging in e-mail phishing scams in order to learn other personal confidential financial information.

10.      As the Unites States Government explained in its brief in support of FACTA's truncation provisions filed in *Papazian v. Burberry Ltd.*, 2:07-cv-01479-GPS-RZ (C.D. Cal.): "Congress' decision to protect both card numbers and expiration dates from inadvertent disclosure

through discarded sales receipts, as many states had already done, directly serves the interest Congress sought to protect" particularly since "***Thieves might piece together (or 'pick off,' in the words*** of Congress) different bits of information from different sources." See Exhibit 3 at pp. 13-16; see also intervention by United States in *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1307 (11th Cir. 2009).

11.    Indeed, the fact that thieves can piece together card information was recently demonstrated by computer scientists who released a study showing how "even starting with no details at all other than the first six digits [of a card number] a hacker can obtain the three essential pieces of information to make an online purchase within as little as six seconds." See Exhibit 1 at p. 2: Six Seconds To Hack A Credit Card (http://www.ncl.ac.uk/press/news/2016/12/cyberattack/). These computer scientists' study showed that starting with nothing more than the first 6 digits of a card number, and "By automatically and systematically generating different variations of the cards security data and firing it at multiple websites, within seconds hackers are able to get a 'hit' and verify all the necessary security data." Exhibit 1 at p. 2; and Exhibit 2: Does The Online Card Payment Landscape Unwittingly Facilitate Fraud?, Mohammed Aamir Ali, et al., (http://eprint.ncl.ac.uk/file_store/production/230123/19180242-D02E-47AC-BDB3-73C22D6E1FDB.pdf).  "Investigators believe this guessing attack method is likely to have been used in the recent Tesco cyberattack which defrauded customers of £2.5m." Exhibit 1 at p. 2.

12.    Nor is this harm made harmless when the risk fails to materialize because no potential identity thief actually sees the receipt.  Even in this situation, the consumer (such as Plaintiff and Class members) must take additional steps to ensure the safety of his or her identity; he or she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later.  The additional

inconvenience that a consumer must undertake in order to secure their own rights, when a statute places that burden on Defendant, is surely a concrete harm. *Deschaaf v. American Valet & Limousine, Inc.*, Case No. 2:16-cv-03464-GMS, 2017 WL 610522 *4 (D. Ariz. Feb. 15, 2017). "As the Seventh Circuit observed, this is why statutory damages exist. Some harms—'a modest concern about privacy, a slight chance that information would leak out and lead to identity theft'— are not easy to quantify, at least in any appreciable dollar amount. See *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). But even if they give rise to no actual *damages*, they are still actual *harms*." *Deschaaf*, 2017 WL 610522 at *4 and n. 7. "Allowing consumers to recover statutory damages furthers [the congressional purpose of keeping information out of the hands of identity thieves] by deterring *businesses* from willfully making consumer financial data available, even where no actual harm results." *Deschaaf*, 2017 WL 610522 at *4 and n. 8 (alterations in original), quoting *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010).

13.     In sum, Defendant has violated FACTA, and has thereby placed the security of Plaintiff and similarly situated Class members at material risk. As a result of Defendant's unlawful practice of violating FACTA's provisions intended to safeguard against identity theft and credit and debit card fraud, Plaintiff seeks, on behalf of herself and the Class, statutory damages, punitive damages, costs and attorney fees, all of which are expressly made available by statute, 15 U.S.C. §§ 1681 *et seq.*

## PARTIES

14.     Plaintiff Joan Pasini, is and at all times relevant hereto was a resident of New York, New York.

15.    Defendant Pret A Manger (USA) Limited (d/b/a Pret A Manger) is a foreign business corporation.  Pret A Manger (USA) Limited (d/b/a Pret A Manger) owns, manages, maintains and/or operates one or more physical retail store locations within this district, offering various goods and services for sale to the public.

## JURISDICTION AND VENUE

16.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

17.    Plaintiff resides in this judicial district and Defendant does business in and resides in this judicial district.

18.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that Plaintiff resides in this district, Defendant has done and continue to do business, and intentionally avail itself of the markets within this district, it owns, manages, maintains and/or operates one or more physical retail store locations within this district, and this is a Class action case in which a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this Class action on behalf of herself and all other persons similarly situated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

20.    The Class which Plaintiff seeks to represent is defined as:

All consumers to whom Defendant, within two years from the date of filing this action, provided an electronically printed receipt at the point of a sale or transaction

at any of Defendant's physical store locations, on which receipt Defendant printed more than the last 5 digits of the consumer's credit card or debit card (the "Class").[1]

21.    Excluded from the Class are Defendant and each of its directors, officers, and employees.  Also excluded from the Class are any justice, judge, or magistrate judge assigned to this action or who presides over any proceeding concerning this action, and any such justice's, judge's, or magistrate judge's spouse, or a person within the third degree of relationship to any of them, or the spouse of such a person.

22.    <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)): The Class is so numerous that joinder of all individual members in one action would be impracticable. The disposition of their claims through this Class action will benefit both the parties and this Court.

23.    Plaintiff is informed and believes and thereon alleges that there are, at a minimum, thousands (*i.e.*, two thousand or more) of members that comprise the Class.

24.    The exact size of the Class and identities of individual members thereof are ascertainable through Defendant's records, including but not limited to Defendant's sales and transaction records.

25.    Members of the Class may be notified of the pendency of this action by techniques and forms commonly used in Class actions, such as by published notice, e-mail notice, website notice, first-Class mail, or combinations thereof, or by other methods suitable to this Class and deemed necessary and or appropriate by the Court.

---

[1] Plaintiff reserves the right to amend or otherwise modify the Class definition and/or add sub-classes.

26.    <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of the entire Class.  The claims of Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful conduct.

27.    Plaintiff and members of the Class were each customers of Defendant, each having made a purchase or transacted other business with Defendant within two years from the date of filing this action, using a credit card or debit card.  At the point of such sale or transaction with Plaintiff and members of the Class, Defendant provided to Plaintiff and each member of the Class a receipt in violation of 15 U.S.C. §1681c(g) (*i.e.*, a receipt on which is printed more than the last 5 digits of the credit card or debit card).

28.    <u>Common Questions of Fact and Law</u> (Fed. R. Civ. P. 23(a)(2) and (b)(3)): There are a well-defined community of interest and common questions of fact and law affecting the members of the Class.

29.    The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

(a)    Whether Defendant's conduct of providing Plaintiff and the Class with sales or transaction receipts whereon Defendant printed more than the last 5 digits of the card violated the FACTA, 15 U.S.C. §§ 1681 *et seq.*;

(b)    Whether Defendant's conduct was willful; and

(c)    Whether Plaintiff and the Class are entitled to statutory damages, punitive damages, costs and or attorney fees for Defendant's acts and conduct.

30.    <u>Adequacy of Representation</u> (Fed. R. Civ. P. 23(a)(4)): Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class which Plaintiff seeks to represent.  Plaintiff will fairly, adequately, and vigorously represent and protect

the interests of the Class and has no interests antagonistic to the Class.  Plaintiff has retained

counsel who is competent and experienced in the prosecution of Class action litigation.

31.    <u>Superiority</u> (Fed. R. Civ. P. 23(b)(1) and 23(b)(3)): A Class action is superior to

other available means for the fair and efficient adjudication of the claims of the Class.  While the

aggregate damages which may be and if awarded to the Class are likely to be substantial, the actual

damages suffered by individual members of the Class are relatively small. As a result, the expense

and burden of individual litigation makes it economically infeasible and procedurally

impracticable for each member of the Class to individually seek redress for the wrongs done to

them.


**<u>CAUSES OF ACTION</u>**

**<u>COUNT ONE</u>**

**For Violation of 15 U.S.C. §§ 1681 *et seq.***

**(On Behalf of Plaintiff and the Class as against Defendant)**

32.    Plaintiff hereby incorporates by reference the allegations contained in this

Complaint.

33.    Plaintiff asserts this claim on behalf of herself and the Class against Defendant.

34.    Title 15 U.S.C. § 1681c(g)(1) provides that "no person that accepts credit cards or

debit cards for the transaction of business shall print more than the last 5 digits of the card number

or the expiration date upon any receipt provided to the cardholder at the point of the sale or

transaction."

35.     By its express terms, 15 U.S.C. § 1681c(g)(1) applies to "any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" after December 3, 2006. 15 U.S.C. § 1681c(g)(3).

36.     Defendant transacts business in the United States and accepts credit cards and debit cards in the course of transacting business with persons such as Plaintiff and members of the Class. In transacting such business, Defendant uses cash registers and or other machines or devices that electronically print receipts for credit card and debit card transactions.

37.     After December 3, 2006, and within two years from the date of filing this action, Defendant, at the point of a sale or transaction with Plaintiff Joan Pasini, provided Plaintiff Joan Pasini with one or more electronically printed receipts on each of which Defendant printed more than the last 5 digits of her credit card number (more specifically Defendant printed the first 6 digits and last 4 digits of the card number) and her name as it appears on her credit card.

38.     After December 3, 2006, and within two years from the date of filing this action, Defendant, at the point of a sale or transaction with members of the Class, provided each member of the Class with one or more electronically printed receipts on each of which Defendant printed, for each respective Class member, more than the last 5 digits of their credit card or debit card number (more specifically Defendant printed the first 6 digits and last 4 digits of the card number) and their name as it appears on the card.

39.     As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit and or debit cards up to December 4, 2006 to comply with its requirements.

40.     Defendant knew of and was well informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates.

41.    For example, but without limitation, several years ago, VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express and JCB), companies that sell cash register and other devices for the processing of credit or debit card payments, companies that sell software to operate payment card devices, companies that maintain and repair hardware or software used to process payment card transactions, and other entities informed Defendant about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendant's need to comply with same.

42.    Other entities, including but not limited to Defendant's merchant bank (also known as the acquiring bank or acquirer) which processes credit and debit card payments for transactions occurring at Defendant's stores, likewise informed Defendant about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendant's need to comply with same.

43.    In addition, many companies such as VISA and MasterCard devised and implemented policies well before the operative date of FACTA's requirements, wherein such policies VISA, MasterCard and others required Defendant (and informed Defendant of the requirements) to truncate credit and debit card numbers and prevent the printing of expiration dates on receipts.  In addition, these companies also publicly announced some of these requirements. For example, on March 6, 2003, VISA USA's CEO, Carl Pascarella, held a press conference on Capitol Hill with Senators Dianne Feinstein, Judd Gregg, Jon Corzine and Patrick Leahy, and publicly announced Visa USA's new truncation policy to protect consumers from identity theft. At the March 2003 press conference, Mr. Pascarella explained, as follows:

Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  **Our new new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.** The card's expiration date will be eliminated from receipts altogether.  This is an added security measure for consumers that doesn't require any action by the cardholder. We are proud to be the first payments brand to announce such a move to protect cardholders' identities by restricting access to their account information on receipts.

**The first phase of this new policy goes into effect July 1, 2003 for all new terminals.**  I would like to add, however, that even before this policy goes into effect, **many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began together several years ago**.

Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers, addresses, Social Security numbers, and more.  Visa's new policy will protect consumers by limiting the information these thieves can access.

44.     Moreover, the Government, through the Federal Trade Commission ("FTC"), provided notice of FACTA's requirements to businesses on no less than three separate occasions in 2007, reminding them of the requirement to truncate credit and debit card information on receipts.  Defendant was informed of and knew about these notices from the FTC.  In one such notice, entitled "FTC Business Alert" "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," and dated May 2007, the FTC reminded businesses, among other things, of the following:

What's on the credit and debit card receipts you give your customers?  The Federal Trade Commission (FTC), the nation's consumer protection agency, says it's time for companies to check their receipts and make sure they're complying with a law that's been in effect for all businesses since December 1, 2006.

According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten — or truncate — the account information.  **You may include no more than the last five digits of the card number,** and you must delete the card's expiration date.  For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT:***********12345
EXP:****

Why is it important for businesses to make sure they're complying with this law? Credit card numbers on sales receipts are a "golden ticket" for fraudsters and identity thieves. Savvy businesses appreciate the importance of protecting their customers — and themselves — from credit card crime.

45.     Defendant also knew that its electronic receipt printing equipment (inclusive of software and other codes) were configured and/or otherwise outdated such that they would print and were printing credit and debit card receipts that displayed more than the last 5 digits of the card's number printed on each customer's receipt in violation of FACTA. Despite this knowledge, Defendant decided to forego and otherwise avoid the expense, time, and other resources required to properly configure and update its electronic receipt printing equipment (inclusive of software and other codes) such that they would not print information (such as more than the last 5 digits of the card) prohibited by FACTA. Thus, Defendant's violations of FACTA were not accidental oversights, but were a means of avoiding the additional expense, time, and other resources required to properly configure and otherwise update its electronic receipt printing equipment.

46.     As set forth above, Defendant put its own interests ahead of and instead of its customers' rights under FACTA.

47.     Thus, despite knowing and being repeatedly informed about FACTA and the importance of truncating credit and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had over three years to comply with FACTA's requirements, Defendant knowingly willfully, intentionally, and recklessly violated FACTA's requirements by, *inter alia*, printing more than the last 5 digits of the card number and the cardholder's name upon the receipts provided to the credit card and debit card cardholders with whom they transact business.

13

48.    Defendant's business peers and competitors brought their credit and debit card receipt printing processes in compliance with FACTA's requirements by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and or the expiration date upon the receipts provided to the cardholders.  Defendant could have readily done the same.

49.    Instead, Defendant knowingly, willfully, intentionally, and recklessly disregarded FACTA's requirements and used cash registers and or other machines or devices that printed receipts in violation of FACTA.

50.    Defendant knowingly, willfully, intentionally, and recklessly violated FACTA in conscious disregard of the rights of Plaintiff and the Class.

51.    As explained above, Defendant has also harmed Plaintiff and the Class by exposing them to at least an increased risk of identity theft and credit and or debit card fraud.

52.    As a result of Defendant's willful violations of FACTA, Defendant is liable to Plaintiff and each member of the Class in the statutory damage amount of "not less than $100 and not more than $1,000" for each violation. 15 U.S.C. § 1681n.

//


//


## PRAYER FOR RELIEF

53.    WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.    An order certifying the Class and appointing Plaintiff as the representative of the Class, and appointing counsel of record for Plaintiff as counsel for the Class;

B.    An award to Plaintiff and the Class of statutory damages pursuant to 15 U.S.C. § 1681n for Defendant's willful violations (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

C.    An award to Plaintiff and the Class of punitive damages pursuant to 15 U.S.C. § 1681n (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

D.    Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. § 1681n;

E.    Payment of reasonable attorney's fees pursuant to, *inter alia*, 15 U.S.C. § 1681n; and

F.    For such other and further relief as the Court may deem proper.

//

//

//

//

//

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,

Date: August 22, 2017


*/s/  Charles J. LaDuca*_____
Charles J. LaDuca (3975927)
Peter Gil-Montllor (5300553)
Matthew Prewitt (to apply *pro hac vice*)
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, New York 11241
Telephone: 202.789.3960
Facsimile: 202.789.1813
pgil-montllor@cuneolaw.com
charles@cuneolaw.com
mprewitt@cuneolaw.com

Chant Yedalian (to apply *pro hac vice*)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Telephone: 877.574.7100
Facsimile: 877.574.9411
chant@chant.mobi

16